UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JULIUS LINSON, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | CAUSE NO. 3:05-CV-399 RM |
| ) | |
| MICHAEL J. ASTRUE,[1] ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant ) | |

OPINION and ORDER

Julius Linson seeks judicial review of the final decision of the Commissioner of Social Security granting his application for disability insurance benefits and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423 and 1382c. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g). For the reasons that follow, the court vacates the Commissioner's decision and remands for further proceedings.

Mr. Linson filed two previous applications for Title XVI benefits in February 1993 and March 1994. Both were denied; no appeal was taken. He reapplied for benefits under Title II and XVI in July 2000, alleging disability as of January 2, 2000 due to elbow and back injuries and depression. When those applications were denied, Mr. Linson requested a hearing before an administrative law judge

---

[1] Michael J. Astrue, the current Commissioner of Social Security, has been automatically substituted as the defendant, pursuant to Fed. R. Civ. P. 25(d)(1).

(ALJ). The ALJ reviewed the documentary evidence, and concluded that a favorable decision could be issued without a hearing. Using Social Security's five-step sequential evaluation for determining disability, *see* 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found that Mr. Linson had not engaged in any substantial gainful activity since January 2, 2000; that his mental impairments, mild mental retardation and depression, were severe and, when considered in combination, met the requirements of Listing 12.05C;[2] and that Mr. Linson was therefore disabled within the meaning of the Social Security Act and was entitled to benefits.

Mr. Linson filed a request for review with the Appeals Council, asserting that he was entitled to more money and should have been awarded benefits back to March 20, 1994. The Appeals Council interpreted his statement as an implicit request to reopen the earlier applications, and found that his current application was filed more than six years from the date of initial denial of his previous applications—"well beyond the time limits for reopening under the Social Security

---

[2] 20 C.F.R. Pt. 404, Subpt. P., App. 1, Sec 12.05C provides:

> *Mental Retardation*: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>         * * *
> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

2

Regulations"—and that no reason existed to reopen the prior determinations or to review the ALJ's favorable decision. *See* 20 C.F.R. §§ 404.988 and 416.1488. The Appeals Council denied the request for review, making the ALJ's decision the final decision of the Commissioner of Social Security. 20 C.F.R. §§ 404.955, 404.981, 416.1455, and 416.1481. This appeal followed.

Mr. Linson contends that medical evidence in the record stated that he was unable to work from February 1993 to March 1994 and that the Appeals Council erred when it "denied the onset date of February 1993 and March of 1994." Mr. Linson asks that the matter be set for trial to reconsider the onset date from his previous applications.

Judicial review under 42 U.S.C. § 405(g) is limited to the final decision of the Commissioner of Social Security, which, in this case, is the ALJ's August 17, 2001 decision granting Mr. Linson's July 28, 2000 application for disability benefits, not the Appeals Council's decision refusing to reopen the earlier proceedings. Califano v. Sanders, 430 U.S. 99, 107-108 (1977); Bolden for Bolden v. Bowen, 868 F.2d 916, 918 (7th Cir. 1989). The medical evidence to which Mr. Linson refers may have been submitted with his earlier applications, but the Appeals Council's decision not to reopen those applications is not subject to judicial review, Califano v. Sanders, 430 U.S. at 107-108; Bolden for Bolden v. Bowen, 868 F.2d at 918; Giancone v. Schweiker, 656 F.2d 1238, 1243 (7th Cir. 1981), and the record before the court contains no medical evidence before 1999.

3

In his July 2000 application, Mr. Linson alleged that he has been disabled and unable to work since January 2, 2000. His earnings record showed that he worked from 1989 through 1999, with annual earnings ranging from a low of $82.00 to a high of $6019.38, but it did not identify the nature or duration of his past employment. Mr. Linson stated in the disability report submitted with his application that he stopped working in January 2, 2000 because he "got fired," that he had anger problems, and that there was "to (sic) much pressure for [him]." He sought medical treatment for a variety of physical conditions in 1999, 2000, and 2001, including neck pain resulting from an automobile accident in January 2000.

In April 1999, Mr. Linson sought emergency room treatment claiming that he was suicidal and had taken an overdose of medication. He was discharged without treatment after admitting to the physician that he hadn't taken an overdose and hadn't actually tried to kill himself.

In September 2000, Darrell Broaddus, Ph.D., conducted intelligence testing and evaluated Mr. Linson's mental condition. The tests showed a verbal intelligence quotient (IQ) of 67, a performance IQ of 65, and a full scale IQ of 64, indicating borderline intellectual functioning to mild mental retardation. Dr. Broaddus's summary states:

> Mental Status and intelligence assessment with Mr. Julius Linson, reveals a 26 year old male functioning in the Borderline range. The full scale score is 64 without acute social adaptive handicaps. The performance test is 65. The verbal score is 67. The mental status exam is consistent with the WAIS-III in indication of

4

> likely functioning between the Mild MR [mental retardation]to Borderline ranges. Mr. Linson presented with symptoms of dysthymic disorder (low energy, poor sleeping and eating patterns, low self-esteem). This test is believed to be valid. Performance on the MSE was consistent with low and very low ratings in most areas except logic, information, and orientation, forward digit recall, and calculation and concentration. He is not able to manage his funds.

(A.R. 104). Dr. Broaddus' diagnoses included:

| | |
|---|---|
| Axis I: | Dysthymic Disorder (earlier medical dx. under treatment) |
| Axis II: | Borderline (full-scale sore=64 without acute adaptive deficits) Mild MR to borderline as grossly assessed eith the MSE |
| Axis III: | Stomach ulcers (self-report), elbow and back injuries (self-reports) |
| Axis IV: | no information |
| Axis V: | GAF 55 |

(A.R. 104).

On February 6, 2001, Dr. J. Hurley concluded that Mr. Linson was unable to work due to mental deficits and severe depression.

Relying on the findings and opinions submitted by Dr. Broaddus and Dr. Hurley, the ALJ concluded that Mr. Linson's combined mental impairments met the requirements of Listing 12.05C as of the alleged onset date, January 2, 2000, and that Mr. Linson was therefore disabled within the meaning of the Act and entitled to benefits.

The parties do not dispute that Mr. Linson is disabled. Mr. Linson's only challenge is to the onset date of his disability. Mr. Linson contends that the onset date determination is not supported by the evidence, and that an earlier date should have been used.

In reviewing the record, the court found two significant procedural defects in the administrative proceedings: Mr. Linson was not informed of his right to be represented by an attorney at the hearing, and he didn't waive that right or his right to be present in person at the hearing. The Commissioner does not contend that these procedural defects were harmless error, indeed, he doesn't acknowledge that there were any defects. The Commissioner simply argues that the ALJ's onset determination is supported by substantial evidence and must be affirmed.

Had Mr. Linson been apprised of his rights and knowingly and intelligently waived them, the court may have been inclined to agree with the Commissioner. *See* Briscoe ex rel. Taylor v. Barnhart, 425 F.3d 345, 353 (7th Cir. 2005); Henderson ex rel. Henderson v. Apfel, 179 F.3d 507, 512 (7th Cir. 1999); Pugh v. Bowen, 870 F.2d 1271, 1274 (7th Cir. 1989). Such is not the case.

Mr. Linson's right to appear personally at the disability hearing and his right to be represented by counsel at that hearing are statutory. *See* 42 U.S.C. § 405(b) and 406; 20 C.F.R. §§ 404.950(a) and 416.1450(a); Skinner v. Astrue, __ F.3d __, 2007 WL 677229 (7th Cir. Mar. 7, 2007); Nelson v. Apfel, 131 F.3d 1228, 1231 n. 1 (7th Cir. 1997); Binion v. Shalala, 13 F.3d 243, 244 (7th Cir. 1991); Stoner v. Sec. of Health & Human Services, 837 F.2d 759, 761 (6th Cir. 1988). A claimant can waive his rights only if he has been properly informed of what those rights entail. 20 C.F.R. 404.929, 404.950(b), and 416.1450(b); Skinner v. Astrue, __ F.3d __, 2007 WL 677229 (7th Cir. Mar. 7, 2007); Binion v. Shalala, 13 F.3d at 245; Thompson v. Sullivan, 933 F.2d 581, 584 (7th Cir. 1991); Stoner v.

6

Sec. of Health & Human Services, 837 F.2d at 761. The ALJ's failure to inform an unrepresented claimant of the right to counsel, and to obtain a valid waiver of that right, heightens his duty to develop the record.³ Skinner v. Astrue, __ F.3d __, 2007 WL 677229 (7th Cir. Mar. 7, 2007); Luna v. Shalala, 22 F.3d 687, 692 (7th Cir. 1994); Thompson v. Sullivan, 933 F.2d at 585-86. In such cases, the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore all relevant facts." Skinner v. Astrue, __ F.3d __, 2007 WL 677229 (7th Cir. Mar. 7, 2007) (quoting Smith v. Sec. of Heath, Educ. & Welfare, 587 F.2d 857, 860 (7th Cir. 1978)). The record before the court provides no indication that Mr. Linson was adequately informed of his right to be represented by counsel, that he knowingly and intelligently waived that right or the right to personally appear at the hearing, or that the ALJ adequately and fully developed the record.

The ALJ found that Mr. Linson's mental impairments were of listing severity as of January 2, 2000, the alleged onset date. But an impairment need meet the requirements of a listing to be disabling within the meaning of the Act, *see* Briscoe ex rel. Taylor v. Barnhart, 425 F.3d at 352 ("[a] finding of disability requires an affirmative answer at either step three or step five"), and the ALJ did not consider whether Mr. Linson's mental impairments may have been severe enough to prevent him from engaging in any substantial gainful activity before January 2,

---

³ The written notices provided to Mr. Linson do not comport with the requirements for establishing a valid waiver. Skinner v. Astrue, __ F.3d __, 2007 WL 677229 (7th Cir. Mar. 7, 2007).

2000.[4] The ALJ made no inquiry into Mr. Linson's past work to determine whether it constituted substantial gainful activity, and did not request Mr. Linson's prior records or state his reasons for not doing so.

Had Mr. Linson been properly informed of his right to personally appear and present additional evidence at the hearing and his right to be represented by counsel, he might have exercised those rights. He, or his attorney, might have sought to amend the onset date alleged in his application, and may have presented additional evidence in support of his claim. But Mr. Linson wasn't informed of his rights and wasn't offered the opportunity to exercise or waive those rights. Absent a valid waiver of the claimant's rights and a fully developed record, the court cannot find harmless error in the ALJ's decision to proceed without a hearing.

In rendering its opinion, the court makes no findings with respect to the merits of Mr. Linson's disability claim, and none should be inferred. Whether Mr. Linson is disabled and entitled to any period of benefits is a decision for the Commissioner. The court holds only that there were procedural errors warranting further administrative proceedings.

Accordingly, the Commissioner's decision is VACATED, and the cause is REMANDED for further proceedings.

---

[4] The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. 423(d)(1)(A).

8

SO ORDERED.

ENTERED:   March 20, 2007

                                                    /s/ Robert L. Miller, Jr.
                                              Chief Judge
                                              United States District Court